**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tanisha Tatum, | No. CV-16-00185-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| DaVita Healthcare Partners, Inc., et al., | |
| Defendants. | |

On September 9, 2013, Plaintiff Tanisha Tatum began working as a Charge Nurse for the DaVita Palm Brook Dialysis Center in Sun City, Arizona. On August 27, 2014, Tatum reported to direct supervisor Sarah Holman that her co-worker had been violating DaVita's medicine administration policy and had made racially derogatory remarks. The following month, on September 11, 2014, Tatum reported an incident to Holman involving a nurse practitioner that had yelled. After speaking with other personnel, Tatum requested an opportunity to provide an email "summation" of her concerns about her job. On September 30, 2014, Tatum emailed a nine-page written complaint to personnel and members of management. Various attempts were made to meet with Tatum to discuss her letter without success. On October 9, 2014, Tatum filed a charge with the Equal Employment Opportunity Commission and resigned from her position.

Tatum filed the instant lawsuit on January 26, 2016 against Defendants DaVita Healthcare Partners, Inc. and Sun City Dialysis Center, LLC (collectively "DaVita"), bringing discrimination and retaliation claims under Title VII of the Civil Rights Act.

(Doc. 1.) DaVita has moved for summary judgment. (Doc. 51.) Having viewed the evidence in the light most favorable to Tatum, the Court finds that there is no genuine issue as to any material fact and DeVita is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Tatum fails to raise a triable dispute as to her claim of disparate treatment. On summary judgment, Tatum does not address the claim or otherwise responds to DaVita's arguments. Having abandoned it, Tatum has failed to show there is a genuine issue for trial, and "Rule 56(c) mandates the entry of summary judgment." *Celotex*, 477 U.S. at 322. *See Estate of Shapiro v. U.S.*, 634 F.3d 1055, 1060 (9th Cir. 2011); *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) ("We have previously held that a plaintiff has 'abandoned ... claims by not raising them in opposition to [the defendant's] motion for summary judgment.'") (quoting *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005)).

Tatum has not demonstrated a *prima facie* case of a hostile-work environment. To establish a prima facie case for a hostile-work environment claim under Title VII, Tatum must show (1) that she was subjected to verbal or physical conduct because of her race; (2) that the conduct was unwelcome; (3) that the conduct was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive work environment; and (4) some factual basis exists to impute liability for the harassment to her employer. *Surrell v. Cal. Water Serv. Co.,* 518 F.3d 1097, 1108 (9th Cir. 2008); *McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1112, 1119 (9th Cir. 2004) ("a court must first assess whether a hostile work environment existed, and then determine whether the response was adequate as a whole"); *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864, 875 (9th Cir. 2001). The Court considers whether the working environment was both subjectively and objectively perceived as abusive, considering "all the circumstances, including the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).

Here, Tatum fails to provide sufficient evidence that she was subjected to harassing conduct that was sufficiently severe or pervasive to give rise to a triable dispute. Tatum's September 2014 letter summarized her August 27, 2014 encounter with her co-worker as follows:

> The most recent report I made to my FA was in August 2014. The report was regarding a nurse giving incorrect doses of Epogen. To start, we were out of stock of 2000 unit vials of Epogen. Instead of the nurse rescheduling all the doses that used 2000 unit vials she used single dose as multi dosing vials; then improperly documented the correct doses were given. When I stated to the nurse to allow me to reschedule the meds she said," If I make you uncomfortable by what I'm doing, don't look; don't give the meds I'll give them". When I returned from assessing my patients she had drawn the entire shift of meds (including my patients) incorrectly. I said to her, "Please stop let me reschedule everyone, let's do the right thing to decrease any unneeded dilemmas". She said, "You refused to give the meds so stop worrying about it, I'll take all the blame." The nurse then began singing the USA for Africa song "We are the world, we are the children..." as I attempted to speak with her, asking her what does that mean, she continued singing. I continued to implore her that knowingly incorrectly dosing medications could be considered by Medicare and private insurances as fraud because you are providing incorrect doses using single-use vials as multi-dose vials. I again approached her at a patient's chairside, speaking softly to her to talk with me as she continued humming the song. When my shift was completed I attempted to give her report. I told her I had rescheduled some of the meds that she had not yet given that remained on the counter and I would continue to reschedule the meds but she continued to ignore me and gave the remaining meds. While finally giving report she walked away while I was speaking to her at the patient's chairside. In speaking to her patient, which was an African American male he told her about his upcoming trip to California. She spoke to him about rain. The nurse told him, "If its gets too wet, just hang from a tree to keep dry". I notified Sarah Holman FA regarding this full issue.

(Pl.'s Sept. 2014 Ltr., Doc. 56-1 at 14-15.) Accepting at true that her co-worker's recantation of the "We are the World" and her comment to the African American patient

was racially offensive, Tatum presents no allegations to suggest that, standing alone, her co-worker's remarks were physically threatening or otherwise so extreme as to sufficiently affect the conditions of employment and implicate Title VII. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998); *Dominguez–Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005) (isolated incidents cannot form the basis for a hostile work environment claim); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 643-644 (9th Cir. 2003) (finding no hostile work environment where a supervisor made direct, offensive statements to a plaintiff on two occasions six months apart); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (simply causing an employee offense based on an isolated comment is not sufficient to create actionable harassment under Title VII).[1] Because Tatum fails to provide sufficient evidence from which a reasonable juror could conclude that she was subjected to harassment that was sufficiently severe or pervasive as to alter the conditions of her employment and create a hostile work environment, DaVita is entitled to summary judgment on this claim.

For the same reason, Tatum fails to show there is a genuine issue for trial as to her constructive discharge claim. *See Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) ("Where a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge: conditions so intolerable that a reasonable person would leave the job."); *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir.2007); *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004) (holding that constructive discharge occurs when working conditions are so intolerable that a reasonable person would have felt compelled to resign).

Lastly, Tatum has not demonstrated a *prima facie* case of unlawful retaliation. In order to establish a prima facie case of retaliation, "the employee must show that he engaged in a protected activity, he was subsequently subjected to an adverse employment

---

[1] Nor does Tatum present sufficient evidence to create genuine dispute of fact as to the remaining incidents alleged. (*See e.g.*, Doc. 56 ¶¶ 27-29, 76.) Tatum fails to identify any of the necessary facts, such as when the incidents occurred or who the speakers were.

4

action, and that a causal link exists between the two." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011); *see also Ray v. Henderson,* 217 F.3d 1234, 1244-45 (9th Cir. 2000) ("harassment, if sufficiently severe, may constitute 'adverse employment action' for purposes of a retaliation claim") (citation omitted). On summary judgment, Tatum claims that when she reported her co-worker's harassment, and then complained of DaVita's failure to respond, it retaliated against her by subjecting her to a hostile work environment, constructively discharging her. Tatum, however, presents no arguments or points to evidence showing that she was subject to severe or pervasive harassment after she submitted her complaints to management. Tatum's failure to establish any causal link between her protected activity and subsequent resignation is fatal to her claim for relief. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013) ("[A] plaintiff making a retaliation claim… must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.").

Tatum has failed to show there is sufficient evidence of discrimination or retaliation to create a genuine dispute for trial and DaVita is entitled to judgment as a matter of law. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 51) is **granted**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall terminate this case and enter judgment accordingly.

Dated this 31st day of March, 2018.

Honorable Steven P. Logan
United States District Judge